### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEWIS J. GRILL** and | : | |
| **CARMELA C. GRILL,** | : | |
| | : | **Civil No. 1:12-CV-120** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **GREGG R. AVERSA** and | : | |
| **THE SAGE CORPORATION,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ATLANTIC PACIFIC** | : | |
| **RESOURCE GROUP, INC.,** | : | |
| | : | |
| **Third Party Defendant** | : | |

### MEMORANDUM OPINION

### I.    Statement of Facts and of The Case

This corporate minority shareholder lawsuit, which arises in the context of a toxic, tragic intra-family dispute, has previously caused us to reflect upon the wisdom of Tolstoy's observation that "Happy families are all alike; every unhappy family is unhappy in its own way." Grill v. Aversa, 908 F. Supp. 2d 573, 576 (M.D. Pa. 2012)(quoting Leo Tolstoy, as quoted in Orchard v. Covelli, 590 F. Supp. 1548, 1550

(W.D. Pa. 1984) aff'd sub nom. Appeal of Orchard, 802 F.2d 448 (3d Cir. 1986) and

aff'd, 802 F.2d 448 (3d Cir. 1986).)

This matter now comes before the Court on a motion for summary judgment

filed by the defendants, a summary judgment motion which is cast against the

backdrop of an "unhappy family [that] is unhappy in its own way."  The protagonists

in this lawsuit, Lewis Grill and Greg Aversa, are brothers-in-law.  Grill's sister is

Aversa's wife.  However, these familial ties are not the only bounds that link Grill

and Aversa to one another.  Grill and Aversa are also shareholders in Sage

Corporation, a closely-held, family-owned corporation that provides education and

training to commercial truck drivers and has in the past through Lewis Grill provided

consulting and expert witness services to trucking companies.  Aversa owns a

majority interest in Sage and Grill is a minority shareholder in this corporation.

As we have previously observed:  "'Frequently, closed corporations originate

in the context of relationships personal in nature, often undertaken by family

members or friends.  It is ironic that these enterprises become a most frequent setting

for [litigation of claims relating to the alleged] exploitation of minority shareholders

when the personal relationship has gone sour.' Orchard v. Covelli, 590 F.Supp. at

1557 (citations omitted)." Grill v. Aversa, 908 F. Supp. 2d 573, 577 (M.D. Pa. 2012).

This is certainly true in the instant case, a lawsuit which constitutes an acrimonious

coda to a family and business relationship which has spanned decades, and by all accounts for many years was mutually rewarding and beneficial for all parties.

The plaintiffs, Lewis J. Grill and Carmela C. Grill, husband and wife, as minority shareholders of the Sage Corporation, commenced this action on January 23, 2012, seeking injunctive relief against Sage and its President and majority shareholder, Gregg R. Aversa.  In the original complaint, the Grills claimed that Aversa was mismanaging Sage, engaging in corporate malfeasance, and indulging in shareholder oppression.  The Grills accordingly sought equitable relief in the form of a court order requiring defendants to produce, or permit plaintiffs, their agents, and representatives, to gain access to corporate records in accordance with Pennsylvania law.  (Doc. 1.)

Following initial proceedings in this case, including a motion for preliminary injunction brought by Lewis Grill, which unsuccessfully sought reinstatement of his employment at Sage after he was discharged by Aversa, see Grill v. Aversa, 908 F. Supp. 2d 573 (M.D. Pa. 2012), the plaintiffs also moved for leave to file an amended complaint to include new claims and additional legal and equitable theories of relief. That amended complaint was filed on September 20, 2012, (Doc. 43.), and includes claims for shareholder oppression under Pennsylvania statutory law (Count I); claims for injunctive relief that would permanently prohibit defendants from terminating the

Grills' employment and would require defendants to cease conducting all business without consulting with and obtaining the consent of the Grills (Count II); claims for breach of fiduciary, loyalty and good-faith duties (Count III); claims that Aversa engaged in legal and equitable fraud by deliberately and materially misleading plaintiffs as minority shareholders of Sage (Count IV); claims for conversion and unjust enrichment (Counts V and VI); a claim that the Court should impose a constructive trust over all of Sage's assets (Count VII); and a claim for wrongful and retaliatory termination of Lew Grill (Count VIII).   In the amended complaint, the Grills seek a range of equitable and legal relief, including compensatory and punitive damages, attorneys' fees, costs and expenses, front and back pay, the reinstatement of Lewis Grill to employment with Sage, "and that he continue to receive his salary as an employee of Sage." (Doc. 43, at 33.)

Aversa and Sage responded to this wholesale assault upon their corporate governance and conduct by, *inter alia*, bringing a third party complaint against Atlantic Pacific Resource Group, Inc., (APRG), a corporation owned and operated by the Grills. (Doc. 51.) This third party complaint alleges that the Grills and APRG have engaged in corporate misconduct by surreptitiously diverting corporate opportunities and revenues of Sage in the consulting and expert witness fields to their own benefit.  (Id.)

Thus, in its current form this lawsuit involves family members who are now locked in intractable corporate conflict, conflict marked by mutual distrust and recriminations, aa well as multi-faceted assertions of corporate and personal misconduct.  The degree of this acrimony, and the depth of this mutual distrust and suspicion is aptly illustrated by the summary judgment motion which is presently before this Court.  (Doc. 101.)  The defendants have supported their summary judgment motion with a detailed 149-paragraph factual recital, describing in close detail what the defendants regard as undisputed facts relating to many aspects of the disputes which now disrupt this corporation, and family.  (Doc. 102.)  This recital, describing these conflicts from the perspective of Gregg Aversa, has now inspired a 186-paragraph factual rebuttal from Aversa's brother-in-law, Lewis Grill, contesting Aversa's statement of undisputed facts, and positing a competing factual narrative regarding the deterioration of this family and corporate relationship from Grill's perspective.  (Doc. 109.)  Not surprisingly, the two narrative threads cast the protagonists' conduct and the issues of corporate governance at Sage in two entirely different lights.

While each party has invited us to find that their competing factual narratives are undisputed, upon a careful consideration of the parties' submissions we conclude that the parties' contrasting factual exegesis simply highlight sharply disputed factual

positions regarding the management of Sage Corporation, and utterly divergent views regarding the inferences we should drawn concerning the motivation, intent, and state of mind of these relatives, and corporate protagonists, over the span of many years. We further find that these contrasting, and often diametrically opposed, narratives regarding the actions, and more importantly, the motives of these various family members simply are not amenable to summary judgment resolution, but rather must be resolved through trial. Moreover, since the record is replete with factual conflicts between the parties, all of which must be determined by the Court following trial, we believe that no useful purpose is served by engaging in our own extended exegesis detailing these divergent narrative. Instead, for the reasons set forth below, we will deny this motion for summary judgment, and will resolve these issues at trial.

## II.   **DISCUSSION**

### A.   **Rule 56–The Legal Standard**

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56 (a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R.

Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In this case, we are obliged to apply the substantive corporate and employment law of Pennsylvania and Montana to this dispute, a diversity lawsuit between residents of Pennsylvania and Montana. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000).  Applying this state law, a dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."

Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  Thus, it is well-settled that:  "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials," Thimons v. PNC Bank, NA, 254 F. App'x

896, 899 (3d Cir. 2007)(citation omitted), and, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Yet, while "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007). This principle applies with particular force to factual disputes which relate to matters of motive or intent since it is well-settled that:  "The motive or absence of motive of a party to

engage in conduct alleged by another party is relevant to determining whether a genuine issue of fact exists. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 596 (1986)." Berda v. CBS Inc., 800 F.Supp. 1272, 1276 (W.D.Pa), aff'd., 975 F.2d 1548 (3d Cir. 1992). Indeed, it is well-settled that: "Motive is a question of fact that must be decided by the [fact-finder], which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor. See Mitchell v. Forsyth, 472 U.S. 511, 529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (improper intent is a pure question of fact); Walker v. Horn, 286 F.3d 705, 710 (3d Cir.2002)." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006). Therefore, "[m]any courts have held that it is inappropriate for a court to grant summary judgment where a question of intent or motive is involved. See, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (concerning anti-trust defendant's motive and intent); Gifford v. Atchison, Topeka & Santa Fe Railway Co., 685 F.2d 1149, 1156 (9th Cir.1982) (concerning employer's motive for terminating employee); Mazaleski v. Treusdell, 562 F.2d 701, 717 (D.C.Cir.1977) (concerning an employer's motive for terminating employee); United States v. Matheson, 532 F.2d 809, 818 (2d Cir.) ('[N]ormally we would deny summary judgment in the face of an offer of live testimony which, if found credible by the trier of fact, might support a material inference adverse to the movant....'), cert.

denied, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976)." <u>Baker v. Lukens Steel Co.</u>, 793 F.2d 509, 512 (3d Cir. 1986).

With these legal benchmarks in mind we turn to a consideration of the legal claims raised in this summary judgment motion.

### B. Fairly Construed The Plaintiffs' Primary Claim Is One of Minority Shareholder Corporate Oppression Which is Not Barred as a Matter of Law

The acrimonious nature of the corporate dispute between these family members is perhaps best exemplified by the threshold legal issue presented in this summary judgment motion.  After two years of litigation, the parties each present starkly contrasting, and irreconcilable, views regarding the fundamental nature of the claims brought by the Grills in this lawsuit.

For their part, the defendants argue in their summary judgment motion that the gravamen of the Grills' complaint is not a direct claim of minority shareholder oppression in the context of a closely held corporation, but rather is a derivative shareholder claim brought on behalf of the corporation against corporate management.  Construing this lawsuit as a shareholder derivative claim, the defendants then insist that the case should be dismissed since the Grills did not comply with a generally recognized threshold requirements to a shareholder

derivative action by first presenting a demand to the corporate board of directors before proceeding to court.

The plaintiffs, in turn, dispute this characterization of their claims, arguing that the gist of their action is a direct claim of minority shareholder oppression. Moreover, the Grills insist that, even to the extent that the complaint may be construed as also stating some derivative shareholder claims, in the specific factual context of a lawsuit arising in a closely held family corporation where the protagonists are not simply corporate actors but are family, they should be excused from having to comply with the formality of any corporate demand requirements before bringing this action.

The competing characterizations of this lawsuit have legal significance for the parties because Pennsylvania law recognizes both direct lawsuits by minority shareholders claiming corporate oppression, and derivative lawsuit brought by shareholders on behalf of the corporation. However, these two different types of corporate claims entail different elements of proof, and have differing procedural prerequisites.

If this case is viewed primarily as a direct action brought by minority shareholders in a closely held corporation alleging shareholder oppression, then our

resolution of this dispute is guided by settled legal standards, standards which

recognize that:

> Majority shareholders have a fiduciary obligation to minority
> shareholders of the "utmost good faith and loyalty." Orchard v. Covelli,
> 590 F.Supp. 1548, 1557 (W.D.Pa.1984), aff'd, 802 F.2d 448 (3d
> Cir.1986); see also Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.,
> 247 F.3d 79, 100–101 (3d Cir.2001) (A majority shareholder "is under
> close scrutiny, and is expected to conform to the highest standards of
> conduct"); Ferber v. Am. Lamp Corp., 503 Pa. 489, 469 A.2d 1046,
> 1050 (1983) ("It has long been recognized that majority shareholders
> have a duty to protect the interests of the minority").  Therefore, a
> "policy of corporate governance which has as its objective the denial of
> benefits to the minority interest runs afoul of this fairness standard and
> calls to question the majority's fulfillment of its fiduciary duty to the
> other shareholders." Orchard, 590 F.Supp. at 1556.  This is especially
> true in a closely-held corporation where shares are not publically traded
> and a fair market is rarely available. Id. at 1557.   Accordingly,
> Pennsylvania courts have held that majority shareholders' duty to the
> minority "prevents them from using their power in such a way as to
> exclude the minority from their proper share of the benefits accruing
> from the enterprise." Ferber v. American Lamp Corp., 503 Pa. 489, 469
> A.2d 1046, 1050 (1983) (quoting Hornsby v. Lohmeyer, 364 Pa. 271, 72
> A.2d 294, 298 (1950)).  This does not mean that majority shareholders
> may never act in their own interest, merely that when they do act in their
> own interest, it must be also in the best interest of all shareholders and
> the corporation. Id. (citing Weisbecker v. Hosiery Patents, Inc., 356 Pa.
> 244, 51 A.2d 811, 814, 817 (1947)).   "Pennsylvania law shifts the
> burden onto the fiduciary to prove that a transaction is fair and not
> fraudulent when the fiduciary acts to benefit himself while in the
> fiduciary role." Bohler–Uddeholm, 247 F.3d at 100–101.

Grill v. Aversa, 908 F. Supp. 2d 573, 592-93 (M.D. Pa. 2012) quoting Bair v. Purcell,

500 F.Supp.2d 468, 483–84 (M.D.Pa.2007).  Further, this minority "shareholder

oppression can take many forms, and ' "[t]actics employed against a minority shareholder to effect such a "freeze-out" include, but are not limited to:  generally oppressive conduct, the withholding of dividends, restricting or precluding employment in the corporation, paying excessive salaries to majority stockholders, withholding information relating to the operation of the corporation, appropriation of corporate assets, denying dissenting shareholders appraisal rights, failure to hold meetings and excluding the minority from a meaningful role in the corporate decision-making." Orchard, 590 F.Supp. at 1557.' Bair v. Purcell, 500 F.Supp.2d 468, 484 (M.D.Pa.2007)." Grill v. Aversa, 908 F. Supp. 2d 573, 593 (M.D. Pa. 2012).  However, the gist of such a direct claim is proof of conduct which goes beyond mere errors or omissions by the majority shareholders in the closely held corporation.  Rather, more must be shown.  Active corporate misconduct by the majority shareholders must be proven and actual minority corporate shareholder oppression is an essential element of any such claim.

In contrast, a shareholder derivative action is brought on behalf of the corporation by shareholders and "permits an individual shareholder to bring 'suit to enforce a *corporate* cause of action against officers, directors, and third parties.' Ross v. Bernhard, 396 U.S. 531, 534, 90 S.Ct. 733, 736, 24 L.Ed.2d 729 (1970). Devised as a suit in equity, the purpose of the derivative action was to place in the

hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.' <u>Cohen v. Beneficial Loan Corp.</u>, 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). To prevent abuse of this remedy, however, equity courts established as a precondition 'for the suit' that the shareholder demonstrate 'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.' <u>Ross v. Bernhard, supra</u>, 396 U.S., at 534, 90 S.Ct., at 736. This requirement is accommodated by Federal Rule of Civil Procedure 23.1, which states in pertinent part: 'The complaint [in a shareholder derivative action] shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.' " <u>Kamen v. Kemper Fin. Servs., Inc.</u>, 500 U.S. 90, 95-96 (1991).

Because these two types of actions having different elements of proof and must satisfy differing procedural prerequisites, corporate litigation often involves disputes like the controversy presented here regarding the proper characterization of a particular claim. In this regard, the controlling legal standards governing this analysis under Pennsylvania law can be simply stated:

To have standing to sue individually, the shareholder must allege a direct, personal injury—that is independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery." Hill v. Ofalt, 85 A.3d 540, 548 (Pa.Super.2014) (citing, *inter alia, v.* Burdon v. Erskine, 264 Pa.Super. 584, 401 A.2d 369, 370 (Pa.Super.1979) (*en banc* ) ("An injury to a corporation may ... result in injury to the corporation's stockholders.  Such injury, however, is regarded as 'indirect,' and insufficient to give rise to a direct cause of action by the stockholder.")).  If the injury is one to the plaintiff as a shareholder as an individual, and not to the corporation, for example, where the action is based on a contract to which the shareholder is a party, or on a right belonging severally to the shareholder, or on a fraud affecting the shareholder directly, or where there is a duty owed to the individual independent of the person's status as a shareholder, it is an individual action.  If the wrong is primarily against the corporation, the redress for it must be sought by the corporation, except where a derivative action by a shareholder is allowable, and a shareholder cannot sue as an individual....  Whether a cause of action is individual or derivative must be determined from the nature of the wrong alleged and the relief, if any, that could result if the plaintiff were to prevail.  In determining the nature of the wrong alleged, the court must look to the body of the complaint, not to the plaintiff's designation or stated intention.  The action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent dissipation of its assets....  If damages to a shareholder result indirectly, as the result of an injury to the corporation, and not directly, the shareholder cannot sue as an individual."

Morrison Informatics, Inc. v. Members 1st Credit Union, 2014 PA Super 166 (Pa. Super. Ct. Aug. 12, 2014)(quoting  Hill v. Ofalt, 85 A.3d 540, 549 (Pa.Super.2014).

While this distinction between direct and derivative actions is straightforward

in its articulation, it can be more complex in its application since many actions by the

majority shareholders in a corporation may result both in direct harm to an individual shareholder, and lead to a broader injury to the corporation itself.  While we recognize the substantial overlap that may exist between direct and derivative claims, in the instant case we believe that the gist of the plaintiffs' claims is a direct claim of minority shareholder oppression, as opposed to a broader shareholder derivative claim on behalf of the corporation.  Indeed, this theme of minority shareholder oppression is a consistent refrain throughout the plaintiffs' pleadings, and any allegations of corporate injury of the type that would also be cognizable in a shareholder derivative action seem to be merely incidental to the minority shareholder oppression claims that lie at the heart of this lawsuit.  Therefore, we conclude that the Grills have standing to bring this lawsuit as a direct action, and are not required to satisfy the procedural prerequisites for a shareholder derivative action.

But in any event, even to the extent that some of these allegations may also be construed as shareholder derivative claims, we find that the plaintiffs' failure to make a demand upon the corporation prior to instituting these claims would not be fatal in this case, which arises out of a series of disputes in a closely held family corporation. Rather, we believe that Pennsylvania corporate case law, which often looks to the ALI Principles of Corporate Governance for guidance in corporate litigation, see Cuker v. Mikalauskas, 547 Pa. 600, 614, 692 A.2d 1042, 1049 (1997), would also

"adopt Section 7.01(d), [of the ALI Principles of Corporate Governance] to the extent that Section 7.01(d) would excuse the demand requirement for derivative actions that are filed on behalf of closely held corporations.  See, e.g., Cooper v. Rucci, 2008 WL 942710 (W.D.Pa.2008) (unpublished memorandum) (applying Section 7.01(d) to excuse the demand requirement for a derivative action that was filed on behalf of a closely held corporation); Nedler v. Vaisberg, 427 F.Supp.2d 563 (E.D.Pa.2006) (same); White v. George, 66 Pa. D. & C.4th 129 (Pa.Com.Pl.2004) (same); Top Quality Mfg., Inc. v. Sinkow, 2004 WL 2554615 (Pa.Com.Pl.2004) (unpublished memorandum) (same); Levin v. Schiffman, 54 Pa. D. & C.4th 152 (Pa.Com.Pl.2001) (same)." Hill v. Ofalt, 2014 PA Super 17, 85 A.3d 540, 556 (Pa. Super. Ct. 2014).

In short, we conclude that the gist of this action is a direct claim of minority shareholder oppression, which should be judged by the standards prescribed by Pennsylvania case law for such claims.  Moreover, to the extent that the complaint also alleges claims that are in the nature of a shareholder derivative action, the failure of the Grills to follow the demand requirement typically imposed in such actions as a prerequisite to filing a lawsuit is a procedural requirement which the Pennsylvania courts would excuse in an action filed on behalf of a closely held corporations  Therefore, neither of these threshold legal objections present a barrier to the consideration of the merits of these claims.

**C.   At Present Disputed Issues of Fact Preclude Summary Judgment for Either Party on the Remaining Claims and Defenses Raised in this Case**

Furthermore, judged by the guideposts which govern motions for summary judgment, we find that the remaining claims and defenses which lie at the heart of this litigation entail an assessment of matters of human motivation and intent, issues that generally are "a question of fact that must be decided by the [fact-finder], which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006)(citations omitted).  Therefore, it would be "inappropriate . . . to grant summary judgment [in a case such as this] where a question of intent or motive is involved." Baker v. Lukens Steel Co., 793 F.2d 509, 512 (3d Cir. 1986)(citations omitted).

For example, the defendants raise the business judgment rule as a complete defense to this action.  That rule, as codified at 15 Pa.C.S. §1715(d), provides that: "*Absent breach of fiduciary duty, lack of good faith or self-dealing*, any act as the board of directors, a committee of the board or an individual director shall be presumed to be in the best interests of the corporation." 15 Pa. C. S. § 1715 (d)(emphasis added).  According to Pennsylvania courts:  "The business judgment rule insulates an officer or director of a corporation from liability for a business decision *made in good faith if he is not interested in the subject of the business*

19

*judgment*, is informed with respect to the subject of the business judgment to the extent he reasonably believes to be appropriate under the circumstances, and rationally believes that the business judgment is in the best interests of the corporation." Cuker v. Mikalauskas, 547 Pa. 600, 606, 692 A.2d 1042, 1045 (1997)(emphasis added).

While we agree that the business judgment rule doubtless has great relevance in the resolution of this case, we are constrained to note that the rule, as codified and interpreted by the courts, presupposes actions that are taken in good faith.  As we view it, this issue of motive is precisely the factual question which lies at the heart of both the Grills' claims of shareholder oppression, and Aversa's assertion of the business judgment rule as a complete defense to those claims.  Since these questions of motive, intent and of state of mind, are the very paradigm of an issue of fact which must be resolved at trial, see Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006), they are not amenable to summary judgment resolution, but must await the trial of this case.

Similarly, the defendants contend that Count I of the plaintiff's amended complaint, which seeks appointment of a receiver or custodian fails as a matter of law.  Under Pennsylvania law, we may, in the exercise of our discretion, see Simms v. Exeter Architectural Products, Inc., 868 F. Supp. 668, 672 (M.D. Pa. 1994),

20

consider appointing a receiver or custodian: "when it is made to appear that: . . . , in the case of a closely held corporation, the directors or those in control of the corporation have acted illegally, oppressively or fraudulently toward one or more holders or owners of 5% or more of the outstanding shares of any class of the corporation in their capacities as shareholders, directors, officers or employees." 15 Pa.C.S. §1767(a)(2).   By permitting appointment of a receiver in a closely held corporate setting based upon a finding of minority shareholder oppression, §1767 calls upon us to first assess both the impact of corporate decision making upon minority shareholders, and the motives underlying that decision-making.   The resolution of these issues will turn on factual findings, in a factual setting marked by disputes between the parties on these essential issues of human motivation. Therefore, the viability of this claim cannot be decided as a matter of law prior to trial but must also await an informed assessment of the evidence.[1]

---

[1] We note for the parties, however, that in conducting this informed assessment at trial all parties should be mindful of the fact that our judgment will be guided by the animating principle that:   "Because of the drastic effect the appointment of a receiver has on a business entity, a court should exercise its power to appoint a receiver 'sparingly, with caution and circumspection, and only in an extreme case under extraordinary circumstances, or under such circumstances as demand or require summary relief.' "  Simms v. Exeter Architectural Products, Inc., 868 F. Supp. 668, 672 (M.D. Pa. 1994)(citations omitted.)

Likewise, to the extent that the defendants' summary judgment motion seeks to strike any claim by the plaintiffs for an accounting of corporate affairs, this request is premature since Grills' entitlement to an accounting, if any, will turn on the resolution of factual questions at trial.   As the defendants' concede, under Pennsylvania law:   "An equitable accounting is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, *or* the plaintiff possesses an adequate remedy at law. Buczek v. First National Bank of Mifflintown, 366 Pa.Super. 551, 531 A.2d 1122, 1124 (Pa.Super.1987)(citing Ebbert v. Plymouth Oil Company, 348 Pa. 129, 34 A.2d 493 (1943); Shaw v. Newingham, 279 Pa. 180, 123 A. 783 (1924); Graham v. Cummings, 208 Pa. 516, 532, 57 A. 943, 949 (1904))." Rock v. Pyle, 720 A.2d 137, 142 (Pa. Super. Ct. 1998).

This recital of the elements of an equitable accounting claim under Pennsylvania law aptly illustrates why it would be premature and inappropriate to grant summary judgment on this claim prior to trial.   At the outset, we note that the Grills' have undoubtedly met the first element necessary for such a claim since they have shown that the defendants, as majority shareholders in a closely held corporation, undeniably owed a fiduciary duty to the Grills as minority shareholders in Sage Corporation. See Orchard v. Covelli, 590 F. Supp. 1548 (W.D. Pa. 1984)

aff'd sub nom.  Appeal of Orchard, 802 F.2d 448 (3d Cir. 1986) and aff'd, 802 F.2d

448 (3d Cir. 1986).  Indeed,"[i]t has long been recognized that majority shareholders

have a duty to protect the interests of the minority."  Ferber v. Am. Lamp Corp., 503

Pa. 489, 496, 469 A.2d 1046, 1050 (1983)  As part of this duty, it is axiomatic  that

"majority stockholders occupy a quasi-fiduciary relation toward the minority which

prevents them from using their power in such a way as to exclude the minority *from*

*their proper share of the benefits accruing from the enterprise.*"  Hornsby v.

Lohmeyer, 364 Pa. 271, 275, 72 A.2d 294, 298 (1950) (Emphasis supplied).

The existence of this undisputed fiduciary relationship, standing alone, defeats

defendants' summary judgment motion as to this particular claim.  However, beyond

this threshold element of proof in an equitable accounting claim, which is fully

satisfied here, the remaining considerations we must take into account involve matters

of alleged motivation and misconduct bu majority shareholders, all of which are hotly

contested by the parties.  In this setting, the plaintiffs' legal and equitable entitlement

to this relief must await our factual findings regarding whether they have established

a set of facts which make an accounting appropriate.

Furthermore, the defendants err when they suggest that summary judgment is

appropriate on the question of whether Aversa breached any fiduciary duty owed to

the Grills, converted any corporate assets, or engaged in acts of unjust enrichment.

To be sure, all of these claims involve serious allegations of corporate wrongdoing. Such allegations are not to be lightly made, and each of these claims imposes exacting burdens of proof and persuasion upon the Grills, who have leveled these charges.

However, it is also clear that the determination of whether the Grills have met this very exacting burden of proof ultimately turns on the resolution of factual questions.   For example, under Pennsylvania law it is well-settled that:   "The elements necessary to prove unjust enrichment are:   (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.   *The application of the  doctrine depends on the particular factual circumstances of the case at issue*."   Mitchell v. Moore, 1999 PA Super 77, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999).   Thus, Pennsylvania courts acknowledge that this issue of unjust enrichment is often the very model of a question of fact, which must be determined at trial.   Similarly, the question of whether Aversa breached a fiduciary duty owed to the Grills will necessarily entail an evaluation of the conduct of the parties, and their subjective motivations, matters that are wholly disputed by the litigants and simply are not subject to resolution as a matter of law.

Given that Pennsylvania courts typically view the issue of unjust enrichment as a "doctrine [which] depends on the particular factual circumstances of the case at issue," Mitchell v. Moore, 1999 PA Super 77, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999), we also conclude that the defendants' motion for summary judgment with respect to Count VII of the amended complaint, which seeks the imposition of a constructive trust over the assets of Sage Corporation, must also be denied at this time.  Pennsylvania law views the factual question of unjust enrichment as an issue which is inextricably intertwined with the issue of whether imposition of a constructive trust is appropriate.  Thus, "a constructive trust is an equitable remedy that is designed to prevent unjust enrichment.  *The test for the appropriateness of creation of such a trust by a Court in equity is whether unjust enrichment can be avoided*." Williams Twp. Bd. of Supervisors v. Williams Twp. Emergency Co., 986 A.2d 914, 922 (Pa. Commw. Ct. 2009)(emphasis added.)  In order to decide whether a constructive trust is needed so "unjust enrichment can be avoided," id., we must first determine whether unjust enrichment has taken place, a determination which "depends on the particular factual circumstances of the case at issue." Mitchell v. Moore, 1999 PA Super 77, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999).  As such, this issue must also await trial.

Finally, we find that the question of whether Lewis Grill was wrongfully terminated as part of a campaign of minority shareholder oppression also raises factual issues which must be decided at trial, and cannot be resolved through a motion for summary judgment.   Viewing this wrongful termination issue as a question governed by Montana law, we note that "Montana's Wrongful Discharge From Employment Act, codified at Mont.Code Ann. §§ 39–2–901, *et seq.* (1995).  Section 39–2–904 provides:  A discharge is wrongful only if: ... (2) the discharge was not for good cause and the employee had completed the employer's probationary period of employment....Mont.Code Ann. § 39–2–904 (1995).  'Good cause,' as utilized in the Wrongful Discharge From Employment Act, means:   [R]easonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Ruzicka v. First Healthcare Corp., 45 F. Supp. 2d 809, 811 (D. Mont. 1997).  Under Montana law, "the stated reason for an employee's discharge is not legitimate . . . if the reason given for the employee's discharge:  (1) is invalid as a matter of law under [Montana's Wrongful Discharge From Employment Act]; (2) rests on a mistaken interpretation of the facts; or (3) is not the honest reason for the discharge, but rather a pretext for some other illegitimate reason.  A discharged employee need only prove that one of these three types is true in her case to demonstrate that the reason for her discharge

26

was not legitimate." Marcy v. Delta Airlines, 166 F.3d 1279, 1284 (9th Cir. 1999). Where there are disputed issues of fact relating to the lawfulness of a particular employee discharge under Montana law, those factual disputes preclude the entry of summary judgment on a wrongful termination claim. See e.g., Blair v. Schwan Food Co., 454 F. App'x 553 (9th Cir. 2011); Marcy v. Delta Airlines, 166 F.3d 1279 (9th Cir. 1999); Weber v. Delta Dental Ins. Co., 882 F. Supp. 2d 1195, 1196 (D. Mont. 2012); Ruzicka v. First Healthcare Corp., 45 F. Supp. 2d 809 (D. Mont. 1997).

Here, we find that there are disputed factual issues which must be resolved before a final definitive judgment may be made on Grill's wrongful termination claim. Specifically, we must determine whether the discharge was pretextual and was part of a broader plan of minority shareholder oppression, as alleged by the Grills. In addition, we must determine, consistent with Montana law, whether the proffered reason for Grill's discharge, even if not pretextual, was based upon a "mistaken interpretation of the facts" by Aversa. Marcy v. Delta Airlines, 166 F.3d 1279, 1284 (9th Cir. 1999). Either of these two factual findings would support a judgment in favor of the plaintiffs under Montana law's "good cause" standard for employee termination, and neither of these factual determinations can be made at this juncture without some further assessment of witness credibility, and human motivation,

matters which cannot be decided on summary judgment but rather must await the crucible of trial.

In this regard, we also note that the defendants have suggested that some of the findings and conclusions which we reached at a prior stage of this litigation when we denied the Grills' motion for preliminary injunction, which sought Lewis Grill's reinstatement to his position at Sage, may now foreclose the plaintiffs from pursuing this claim. The defendants err when they suggest that this issue has been foreclosed by our initial preliminary injunction ruling. Indeed, on this point the defendants err on two scores.

First, the defendants err as a matter of law since:

> [W]hile the law of the case doctrine bars courts from reconsidering matters actually decided, it does not prohibit courts from revisiting matters that are "avowedly preliminary or tentative." See Wright & Miller, § 4478, at 798. As the Supreme Court has explained:
>
>> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing, and *the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.*

> University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830,
> 68 L.Ed.2d 175 (1981) (citations omitted) (emphasis added); see also
> New Jersey Hosp. Ass'n v. Waldman, 73 F.3d 509, 519 (3d Cir.1995)
> (stating that findings of fact and conclusions of law made on preliminary
> injunction motions do not bar courts from making contrary findings or
> conclusions at a final hearing); Clark v. K–Mart Corp., 979 F.2d 965,
> 967–68 (3d Cir.1992).

> Council of Alternative Political Parties v. Hooks, 179 F.3d 64, 69-70 (3d
> Cir. 1999).

More fundamentally, the defendants err as a factual matter when they suggest

that our prior ruling on this motion for preliminary injunction purported to make

definitive, final factual determinations of this wrongful discharge issue.  Rather, we

specifically eschewed any such findings in our ruling on this motion for preliminary

injunction and instead foreshadowed the continuing factual conflicts on this issue,

concluding that:  "when we view the evidence presented by the parties, through the

legal prism that defines corporate and familial responsibilities in a closely held

corporations we find that, with respect to the broad issue of minority shareholder

oppression, the evidence is marked by competing and conflicting cross-currents to

such a degree that we cannot state that either party has with any great confidence

established a substantial likelihood of success on the merits at the outset of this

litigation.  Quite the contrary, the principal protagonists in this litigation have each

simply provided the Court with some, hotly disputed, evidence supporting their

mutual suspicions of corporate mismanagement and malfeasance by other family

members.  Thus, Lewis Grill and Gregg Aversa each casts doubt upon the other's use, misuse and misappropriation of corporate assets and opportunities, while each enjoyed the benefits of these same corporate assets and opportunities.  As to this broad issue, the evidence rests in equipoise with neither party clearly demonstrating a likelihood of success on the merits."  <u>Grill v. Aversa</u>, 908 F. Supp. 2d 573, 593 (M.D. Pa. 2012).

### III.   <u>Conclusion</u>

In sum, we conclude as we began, acknowledging that this corporate minority shareholder lawsuit, which arises in the context of an intra-family dispute, both confirms the wisdom of Tolstoy's observation that "Happy families are all alike; every unhappy family is unhappy in its own way," and underscores that the task of discerning the truth behind corporate-familial disputes cast lies in determining the factual backdrop of this discord.  Since this task must await trial, the defendants' motion for summary judgment (Doc. 101.) will be denied.

An appropriate order follows.


<u>**S/Martin C. Carlson**</u>
Martin C. Carlson
United States Magistrate Judge


September 18, 2014